[No. 30033. Department Two. May 22, 1947.]

JENNIE COLASURDO, *Appellant*, v. ANGELO COLASURDO, *Respondent*.[1]

[1]Reported in 181 P. (2d) 172.

*Lenihan & Ivers,* for appellant.

*Chavelle & Chavelle,* for respondent.

JEFFERS, J.—This is a divorce action, based upon the ground of cruelty, instituted by Jennie Colasurdo against her husband, Angelo Colasurdo. Defendant, by his answer, denied the allegations of cruelty contained in the com-

plaint, and, by his cross-complaint, he also asked that a decree be awarded to him on the ground of cruelty.

The cause came on for hearing before the court on March 21, 1946, was continued on March 22nd and March 25th, and thereafter continued to March 30, 1946, being concluded on April 8, 1946, as shown by the preliminary statement to the findings of fact. On April 19, 1946, the court made and entered findings of fact, conclusions of law, and an interlocutory decree of divorce favorable to defendant. No motion for a new trial was made.

The court found that the parties were married on May 16, 1925, and ever since have been husband and wife; that as a result of such marriage there had been born two daughters, Theresa, twenty years of age, and Suzanne, sixteen years of age. The court further found that the parties had acquired certain real and personal property during their marriage, among which is the Angelo Cafe, located at 501 Jackson street, in the city of Seattle. A description of the other property is then set out. We quote finding No. 5 in full, as it is undoubtedly the basis of the court's conclusion relative to which party was entitled to a divorce, and relative to a division of the property.

Finding No. 5:

"That the home of the parties hereto was invaded by two men, and that plaintiff, under the evidence, was very indiscreet with two others; that plaintiff continued her misconduct with one of these men after defendant had attempted to affect a reconciliation, and that she continued to correspond—not only with this soldier, but—to the various members of his family, represented herself to them as a 'Miss' Colasurdo, and received assurances from them of their brother's and son's love for her and, also, his assurances that he was returning to marry her; when he did return, she discarded him when his affections became so violent that she couldn't stand him, to take up with another, who is now living in this house with her and a man that comes on the witness stand and testifies that he is in love with her and she is in love with him and that they expect to get married; that plaintiff had ordered the defendant out of his home and then took up with some soldier whose name is unknown, and also had an affair with

another soldier and, at the time of the trial, plaintiff was still harboring in her house her lover who had the audacity to come to defendant and say that he was going to stay there unless the defendant protected his wife and daughters from her former lover; that defendant has shown that he is very much in love with his wife and daughters, and the plaintiff has subjected the defendant to cruel treatment and personal indignities, rendering his life burdensome in the extreme, without any just cause or provocation."

Finding No. 6 states:

"That because of the misconduct of the plaintiff and for the purpose of showing that the defendant on the merits is the injured party and is entitled to a divorce, and also for the purpose of showing among other reasons why the court in making a division of the property, in the exercise of what the court believes to be justice and equity, is awarding a greater portion of the property to the husband, the defendant."

The finding then sets out and describes certain pieces of real property and certain items of personal property, with the value of each, as fixed by the court. The value of all the property totals the sum of $107,674.25. The finding continues:

"I have placed a top value on the business and on the home property. The appraisal of the business and home property furnished is $65,000.00; that might be high, but I believe that they could be sold for that today;

"That the amount that I find that the plaintiff is entitled to have awarded to her is $20,314.77 made up as hereinafter set forth in the conclusions of law and decree."

The court concluded that defendant was entitled to an interlocutory decree of divorce; that plaintiff should be denied a divorce and her action dismissed; that defendant should be awarded the following real and personal property: The Angelo Cafe, together with the stock, fixtures, and equipment located therein, which the court, in finding No. 6, determined to be of the value of $30,000; the property referred to as the home property, being lots 23 and 24, in block 25, replat of blocks 8, 16, 17, 22, 23, and 24 of West Seattle Park, together with the household furniture and

furnishings located therein; three life insurance policies; cash in Seattle-First National Bank, $2,140.98; defendant's personal bank account, $600, and his business bank account, $1,100; United States victory loan bonds estimated to be worth $3,468.50; Chrysler automobile, estimated to be worth $1,600; other real estate, all of the estimated value of $86,359.48.

The court further concluded that plaintiff should be awarded the following real and personal property: Lot 6, block 7, of Walker's Addition to the city of Seattle, with the appurtenances thereunto belonging (being a corner lot at $5,500); balance due on the contract on property located at 1515 E. Olive street, of an estimated value of $3,000; bank balance in International Branch of Seattle-First National Bank, $1,590.91; bank balance in National Bank of Commerce, $1,623.86; 1942 Plymouth automobile estimated to be worth $1,500; diamonds and jewelry worth $4,600; fur coat, $2,000; furs, $500; and other of plaintiff's wearing apparel and effects personal to herself, of undetermined value. (It will be noted that $7,100 of the $21,-314.77 worth of property awarded to plaintiff is the value placed upon diamonds, jewelry, fur coat, and furs.)

The court further concluded that joint control of the daughters should be awarded to the parties, but that defendant should be charged with the support and education of the daughters during their minority, or until such time as they should marry.

The court further concluded that plaintiff should be permitted to reside in the West Seattle property until either such time as she should remarry, or such time as both children become emancipated by marriage or otherwise; that defendant should likewise be permitted to make his home in the West Seattle property; that defendant should pay to attorneys for plaintiff the sum of five hundred dollars for their services. An interlocutory decree was entered in accordance with the conclusions of law, and this appeal by plaintiff followed.

The errors assigned are in denying appellant a divorce; in granting respondent a divorce; in awarding to respondent property of the value of $86,359.48 and to appellant property of the value of $21,314.77; in not awarding to appellant at least one half of the community property, excluding gifts of a personal nature theretofore made to her by respondent; in awarding to the parties joint custody of the minor daughters; and in awarding the home of the parties to respondent and permitting both parties to occupy such home.

At the outset, we are met by a motion to strike what will be termed the proposed statement of facts, and also what will be referred to as the supplemental statement of facts.

Rule 9, Rules of Supreme Court, 18 Wn. (2d) 9-a, provides:

"(1) A proposed bill of exceptions or statement of facts must be served and filed in the office of the clerk of the superior court within ninety days after the date of entry of the final judgment, or appealable order, for the purpose of appealing from which the bill or statement is proposed. And the certifying of a bill of exceptions or statement of facts provided for by Rem. Rev. Stat., §§ 388-396 [P.C. §§ 7816-7824], and the filing and service of the proposed bill or statement, the notice of application for the settlement thereof, and all other steps and proceedings leading up to the making of the certificate, shall be deemed steps and proceedings in the cause itself, resting upon the jurisdiction originally acquired by the court in the cause."

Rem. Rev. Stat., § 389 [P.P.C. § 47-17], provides in part:

"A party desiring to have a bill of exceptions or statement of facts certified must prepare the same as proposed by him, file it in the cause and serve a copy thereof on the adverse party . . . within ten days after such service any other party may file and serve on the proposing party, any amendments which he may propose to the bill or statement. . . . If no amendment shall be served within the time aforesaid, the proposed bill or statement shall be deemed agreed to and shall be certified by the judge at the instance of either party, at any time, without notice to any other party on proof being filed of its service, and that no amendments have been proposed."

The interlocutory decree was filed April 19, 1946. On July 18, 1946, or the ninetieth day after the filing of the decree, appellant filed and served a proposed statement of facts. Attached to this statement is a certificate of A. E. Kane, an official court reporter for King county, which states in part as follows:

"That as such [reporter] I reported a portion of the case entitled Colasurdo vs. Colasurdo being the afternoon session of March 22, 1946 and numbered in typewriting following the names of the witnesses 1 to 89 inclusive.

"I do further certify that the said portion of the Statement of Facts is a full and correct transcript from my stenographic notes and from Veriphone sound recording made at the time.

"Dated at Seattle this 12th day of July, 1946."

It will be noticed that the above certificate does not purport to certify that the statement of facts contains a complete record of the matters and proceedings occurring at the trial, but to the contrary, it shows affirmatively that the statement contains only the matters and proceedings occurring at the afternoon session of March 22, 1946.

It may be stated here that, at the time appellant filed the above statement, she did not serve and file a concise statement of the points on which she intended to rely on this appeal, as required by subd. 2, of Rule 9, Rules of Supreme Court, and no contention is made that the proposed statement was filed under subd. 2, *supra*.

On July 20, 1946, which was within the ten-day period, respondent served on counsel for appellant proposed amendments to the statement of facts, which proposed amendments indicate that a considerable part of the record was not included in the statement of facts, nor were any of the exhibits referred to.

On July 31, 1946, appellant served on counsel for respondent an additional statement of facts. This statement shows that it is a continuation of the original statement. It begins: "March 25, 1946, 10:00 o'clock A. M. ANGELO COLASURDO (on the stand) DIRECT EXAMINATION (resumed)." The statement contains some one hundred twenty-

three pages of testimony, beginning on p. 178, and ending on p. 301. It will be noticed that the service of this additional statement was some twelve days after the expiration of the ninety-day period.

On August 7, 1946, respondent filed a motion to strike both the proposed statement of facts and the amended or supplemental statement. The matter came on to be heard on the objections to the proposed statement of facts and the motion to strike, and, on August 12, 1946, the court made and entered an order denying respondent's motion to strike, and ordering:

"That plaintiff [appellant] be and she is hereby required to complete the statement of facts heretofore filed herein by including therein, in the proper places in consecutively numbered pages, the direct and cross-examination of Frank Cresto and all of the testimony of said witness; all of the testimony of defendant [respondent], Angelo Colasurdo; defendant's motion and the ruling thereon at the close of plaintiff's case; the balance of the testimony to the closing of plaintiff's case and the testimony at the beginning of defendant's case and the testimony on rebuttal."

It was further ordered that some corrections in words be made, and that the exhibits admitted during the trial be referred to and described. On the same day, August 12, 1946, appellant filed the amended statement, which had theretofore been served on counsel for respondent on July 31, 1946. It will be noticed that the amended or supplemental statement was not filed until one hundred fifteen days after the entry of the decree. Attached to the supplemental statement is a certificate of the trial judge to the effect

". . . that the matters and proceedings contained in the foregoing statement of facts, Vol. No. 1 and Vol. No. 2, are matters and proceedings occurring in said cause, and the same are hereby made a part of the record herein . . . That the same contains all the material facts, matters and proceedings heretofore occurring in said cause, and not already a part of the record herein."

On the proposed statement. "Vol. 1" is written in ink,

and on the supplemental statement, "Vol. 2" is written in ink.

It may be stated here that the record does not show affirmatively why the original statement was filed in the condition that it was. However, counsel for appellant, in oral argument, frankly admitted that the original statement of facts did not purport to be and was not filed as a complete record of the proceedings occurring at the trial; that counsel had been informed by the court reporter that he would get out the record so that it could be filed within the ninety-day period; that, when counsel learned that there would be no chance of getting the entire record in time to file it within the ninety-day period, he had the reporter certify to so much of the record as was then prepared, which appellant filed in the cause.

■ In so far as the excuse offered in oral argument by counsel for appellant for not filing a complete statement of facts within the time required by the statute is concerned, we desire to refer to the recent case of *Wheeler v. S. Birch & Sons Const. Co., ante* p. 325, 178 P. (2d) 331, wherein we struck a statement of facts not filed within the statutory period, notwithstanding an affirmative showing that the failure to file such statement was due to the fact that the official court reporter had been unable to get out the record.

However, appellant's contention in this case is that, respondent having filed proposed amendments to the original statement; which was filed within the ninety-day period, the trial court was justified and had authority, at the hearing on the proposed amendments and motion to strike, to deny the motion to strike and to order appellant to furnish the additional part of the record which is included in the supplemental statement filed August 12, 1946, and that the court was justified in considering the original and supplemental statements as one complete statement of facts. Appellant relies upon the case of *Livermore v. Northwest Airlines,* 6 Wn. (2d) 1, 106 P. (2d) 578, to sustain her contention.

■ We recognize that a proposed statement of facts may contain errors or be deficient in certain respects, and that, where such a statement is filed within the statutory time and amendments to such statement are proposed within the ten-day period, the trial court may, after the ninety-day period, order the statement to be corrected or the deficiencies supplied, and that an appellant may, under such circumstances, comply with the court's order after the ninety-day period. However, Rule 9, *supra*, clearly anticipates, and we have held, that, in order to satisfy the rule, a statement of facts must be filed in good faith and with an intent that such statement is a full and complete record of the matters and proceedings occurring at the trial. Such a statement was filed in the *Livermore* case, *supra,* although it is true we stated that the statement was garbled. We said:

"From the statutes and decisions, we gather the following rules: . . .

"The statement of facts may be stricken in cases from which it appears that no attempt was made by appellant to furnish a complete statement containing all the material facts, matters, and proceedings occurring upon the trial, and in those cases in which the appellant intentionally casts upon his opponent any considerable portion of his statement through proposed amendments."

It is true that in the *Livermore* case we refused to strike the statement of facts which the trial court had ordered appellant to prepare and file after the ninety-day period, but, as stated, the original statement having been filed in good faith as a final and complete record, a different situation was presented than we have in the instant case.

It may be admitted, as stated in *State ex rel. Fowler v. Stiner,* 51 Wash. 239, 98 Pac. 609, that ordinarily the procedure provided by statute does not seem to contemplate the practice of moving to strike the statement of facts merely because it does not conform to what the adverse party may deem a proper and correct statement, but the remedy given an adverse party is the right to propose,

within the ten-day period, such amendments as will make the statement a proper and correct statement of facts.

It seems to us that, before the court would have any authority to add to or supplement a proposed statement of facts, even though amendments to such statement had been proposed, the proposed statement must be one conforming to the statutory requirements. If it does not so conform, as admittedly it does not in the instant case, it is no statement of facts at all, and the court would have no authority to make of record proceedings which are not of record, by a so-called supplemental or additional statement of facts filed after the ninety-day period. See *State v. Sherwood,* 166 Wash. 160, 6 P. (2d) 595.

As indicating how closely this court has adhered to the statutory requirements, we desire to refer to the case of *Pattison v. Walker,* 2 Wn. (2d) 62, 97 P. (2d) 160, 100 P. (2d) 20. In the cited case, a purported statement of facts in narrative form was filed March 16, 1939. Subsequently, the respondent moved to strike the proposed statement and noted the matter for hearing. When the matter came before the court, it was stipulated by the attorneys for the respective parties that the motion might be stricken, and that appellants would prepare and file a transcript of the proceedings of all the trial, in so far as they pertained to the first cause of action. This latter statement was filed April 28, 1939, or more than ninety days after the order denying the motion for new trial was filed. The opinion, after referring to Rule 9, states:

"The filing of the statement within a ninety-day period, as required by the rule and statute, is jurisdictional and may be raised at any time, or may be raised by the court of its own motion. [Citing cases.]

"Parties to the litigation cannot, by stipulation, give this court authority to entertain jurisdiction. [Citing cases.]

"It is said, however, that the second statement of facts was but an amendment of the prior narrative statement. In the case of *Tremblay v. Nichols,* 187 Wash. 109, 59 P. (2d) 1123, it was held that a supplemental statement filed after the ninety-day period could not be entertained. In the case now before us, the second statement is referred

to as an amendment of the first. But this is no different than if it had been called a supplemental statement. It does not appear, however, that the second statement was intended, when it was filed, to supplement the first. The reason given for the failure to file the second statement in time was that the court reporter had been ill and caused the delay in its preparation."

In the instant case, the so-called supplemental statement was not a supplemental statement at all but was a statement of the matters and proceedings occurring at the trial which the court reporter had not transcribed in time to file it within the ninety days; in other words, it purported to complete a record which was admittedly incomplete and not in conformance with the statutory requirements.

Appellant seems to take the position that, because respondent filed proposed amendments to the original statement of facts, the court had authority to order the filing of this so-called supplemental statement after the expiration of the ninety-day period, regardless of whether or not the statement of facts filed was in fact a statement of facts as required by the statute. With this contention we cannot agree.

Respondent moved to strike the statement of facts, as hereinbefore stated, and has again so moved in this court. We are clearly of the opinion the statement will have to be stricken, unless it can properly be examined in connection with, and regarded as a part of, the so-called supplemental statement, and, if the supplemental statement cannot be considered, then it follows that the record is here upon an incomplete and insufficient statement of facts.

A situation much like the one here being considered was presented to the court in the case of *Schultz v. Anderson,* 191 Wash. 326, 71 P. (2d) 365. In that case, three separate statements of facts were filed by the appellant. The first proposed statement was filed on August 28, 1936, which was within the ninety-day period. We had the following to say relative to this proposed statement:

"While the certificate thereto is in the form required by Rem. Rev. Stat., § 391 [P.C. § 7819], the statement itself

discloses in its opening recital and throughout its length that it contains only the proceedings occurring on and *after* September 18, 1934. [In the instant case the original statement shows that it contains only the proceedings occurring at the afternoon session of March 22, 1946.] Manifestly, therefore, *it was not a complete statement of facts and, standing alone, could not be considered as a proper or sufficient statement on appeal.* [Italics ours.] The proposed statement must, therefore, be stricken unless it can properly be examined in connection with, and regarded as part of, the supplemental statement of facts, next to be considered.

"The supplemental statement of facts consists of two volumes, totaling four hundred and seven pages. This statement according to its certificate, 'contains all the material facts, matters and proceedings in the case which were omitted from the defendants' proposed statement of facts.' [In the instant case the supplemental statement contains all the proceedings not contained in the original statement.] If, then, we have a complete and proper statement of facts at all, it must be because the proposed statement of facts and the supplemental statement of facts, taken together, make up a complete and adequate statement. [That is the exact situation in the instant case.] But if, for any reason, the supplemental statement can not be considered, then obviously, the record is here upon an incomplete and insufficient statement of facts.

". . . If the supplemental statement of facts was filed on September 30, 1936, as indicated by the clerk's file mark, it manifestly was not within the ninety-day period prescribed by the statute.

"We have, then, this situation: The clerk's file mark shows that the supplemental statement of facts was filed on a day which was far beyond the ninety-day period, while the court's certificate recites that it was 'duly and regularly filed.' [In the instant case we do not have any question as to the filing date of the supplemental statement.]"

In the cited case, the opinion then discusses the question of whether the file mark of the clerk or the certificate of the judge should prevail as to the date of filing, and then states:

"The date of the clerk's file mark appearing upon an instrument or part of a record filed with him is *prima facie* evidence of the time when such instrument or part of a

record was filed, and, in the absence of evidence to the contrary, is conclusive."

The opinion further states:

"The requirement as to serving and filing a statement of facts within the ninety-day period is prescribed by a rule of this court, Rem. Rev. Stat., § 308-7 [P.C. § 8676-10], and the remedy·for failure to comply with the rule is by motion, in this court, to strike the statement as certified. *Potlatch Lumber Co. v. Ferry County,* 167 Wash. 491, 9 P. 783; *McCrabbe v. Jones,* 171 Wash. 326, 17 P. (2d) 860.

". . . In the supplemental transcript is an order filed August 31, 1936, which extended the time for filing the proposed supplemental statement of facts fifteen days. That order was ineffectual because the court was without power to extend the time beyond the ninety-day period. *State v. Parkinson,* 181 Wash. 69, 41 P. (2d) 1095. There is a further order, filed September 11, 1936, extending the time to October 1, 1936. That order was, likewise, ineffectual. . . .

"We are therefore of the opinion that the supplemental statement of facts must be stricken because it appears that it was not timely filed. This would, of course, eliminate the proposed statement of facts, whether it be considered separately or as part of the supplemental statement."

We are of the opinion that the proposed statement of facts filed in the instant case on July 18, 1946, was in fact no statement of facts at all. This being true, we are further of the opinion that the trial court was without authority to require appellant to file, subsequent to the ninety-day period, a proposed supplemental or additional statement of facts, and then certify that the supplemental statement and the original statement contained a complete record of all the matters and proceedings occurring at the trial. If this could be done, it is so apparent that it would nullify the provisions of Rule 9 as to need no further argument. We therefore conclude that respondent's motion to strike appellant's proposed statement of facts and supplemental statement of facts must be, and it is, granted.

The only question left for consideration is whether the findings of fact made by the trial court support the judgment. Appellant admits in her brief the finding relative

to the property owned by the parties, and that the trial court correctly evaluated such property. Appellant contends that the findings themselves establish the incorrectness of the court's conclusions relative to the division of the property.

In the first part of this opinion, we set out the property and the values placed thereon by the trial court. We set out finding No. 6, which purports to state the basis for the awarding of a greater part of the property to respondent. We appreciate that, in determining whether or not the findings support a judgment, every necessary presumption must be indulged in to sustain it, in the absence of an affirmative showing in the findings that the facts necessary to sustain it did not exist.

We are of the opinion that the findings of fact in the instant case do not support the conclusions of law and judgment relative to a division of the property, as made by the trial court. We are convinced that the findings affirmatively show that the unequal division of the property was made to penalize appellant because of her conduct, as set out in finding No. 6. We make no attempt to justify the actions of appellant, and we can appreciate the feelings which might be aroused in a court against a woman who had so conducted herself. However, these parties had lived together for more than twenty years, had acquired all this property by their joint efforts, and had raised two daughters, as found by the court. We think it apparent from the findings that the acts set out in finding No. 6 were quite recent. It is difficult to believe that the trial court concluded that appellant was morally unfit, otherwise we cannot conceive that it would have awarded to the parties joint custody and control of their daughters, one of whom was only sixteen years of age at the time of trial.

We have quite consistently held that the fault of one of the parties is not a determining factor in the division of property, although it is a factor to be considered, Thus, in *Fitzpatrick v. Fitzpatrick*, 105 Wash. 394, 177 Pac. 790, we stated:

"The contention is made by the appellant that, inasmuch as the granting of the divorce to her showed that the respondent was in the wrong, she was entitled to the larger proportion of the property, and that she was awarded, at best, but an equal proportion. But aside from the fact that the record indicates that the court did not find her entirely free from fault, *the circumstance itself is not controlling.* As we say, the code requires an equitable division of the property. While the circumstance of fault is a proper matter to be inquired into in making the division, it is only a persuasive matter; it does not require that a larger proportion of the property be given to the party not in fault than is given to the other." (Italics ours.)

In the case of *Otto v. Otto,* 178 Wash. 41, 33 P. (2d) 1074, we stated:

"While the circumstance of fault on the part of one party or the other is persuasive and is proper to be inquired into in making the division, it is of itself not controlling."

In the recent case of *Myers v. Myers,* 21 Wn. (2d) 19, 149 P. (2d) 926, we find the following statement:

"The fact that one of the parties may have been in serious fault *does not justify the imposition of a severe penalty in the way of deprivation of property.* The matter of fault is a proper one for inquiry when making a division of property, but this of itself does not require that a larger portion of the property be awarded to the one not in fault than is given to the other." (Italics ours.)

■ The award to respondent of property of the value of $86,359.48, which property included the home and its furniture and fixtures, while awarding to appellant property of the value of $21,314.77, which award included personal property of the value of some $7,100, consisting of jewelry, fur coat, and furs seems to us to be so inequitable and unequal as not to find support in the findings, conceding as we do, serious fault on the part of appellant. In other words, we are of the opinion appellant was too severely penalized for her misconduct.

■ We are also of the opinion that the findings do not support the conclusion that both the parties should be permitted to make their home and live in the home prop-

erty. It seems to us it is apparent from the findings that to permit both of them so to do would create an impossible situation, and one not justified by the findings.

■ We conclude, for the reasons herein stated, that the judgment of the trial court should be modified to the following extent: that appellant, in addition to the property awarded to her by the decree, should be awarded, in cash, the sum of ten thousand dollars. In order that the payment of this cash award may not work a hardship on respondent, the award shall be paid by respondent to appellant as follows: five hundred dollars on June 1, 1947; five hundred dollars on September 1, 1947; and five hundred dollars every three months thereafter, until the full sum of ten thousand dollars has been paid, together with interest at the rate of four per cent per annum on the unpaid balances.

In order that the various properties awarded to respondent may not be encumbered, appellant will be given a specific lien on the home property only, consisting of lots 23 and 24, block 25, replat of blocks 8, 16, 17, 22, 23, and 24 of West Seattle Park, according to the plat thereof recorded in vol. 12 of Plats, p. 49, records of King county, Washington, to secure the payment of such ten thousand dollars, and when and at such time as the ten thousand dollars and interest has been fully paid, appellant shall execute and give to respondent a proper release of such lien.

We are also of the opinion that the conclusions and decree should be further modified by eliminating therefrom the right accorded to appellant to live in and make her home in the home property.

The judgment will be affirmed as modified.

The cause is therefore remanded to the trial court, with instructions to make and enter conclusions of law and a decree in accordance with this opinion. Appellant will recover her costs on this appeal.

MALLERY, C. J., STEINERT, ROBINSON, and HILL, JJ., concur.